**IN THE COURT OF APPEALS OF IOWA**

No. 24-1908
Filed March 5, 2025

**IN THE INTEREST OF A.G.,**
**Minor Child,**

**N.G., Father,**
     Appellant.

_____

Appeal from the Iowa District Court for Polk County, Lynn Poschner, Judge.

A father appeals the termination of parental rights to his child. **AFFIRMED.**

Richard Hollis, Des Moines, for appellant father.

Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellee State.

Tonya A. Oetken of Oetken Law Firm, Inc., Ankeny, attorney and guardian ad litem for minor child.

Considered by Ahlers, P.J., and Badding and Buller, JJ.

**BULLER, Judge.**

The father appeals from the termination of his parental rights to his child A.G. (born 2019).  Following a contested trial, the juvenile court found termination of the father's rights in the best interest of the child but denied termination and granted a six-month extension for the mother.  The father appeals, challenging that best-interests finding, disputing whether reasonable efforts were made toward reunification, and urging a permissive exception.  We affirm.

**Background Facts and Proceedings.**  The child's parents were both incarcerated in federal prison on gun-related convictions when he was a few months old.  The child was placed informally with relatives until the mother was released from prison in 2020.  The child was removed by the Iowa Department of Health and Human Services (HHS) in late 2022 after the mother flipped her vehicle with the child inside and was charged with operating a vehicle while intoxicated.  The child was placed briefly with the mother's paramour, then foster care, and then placed with a relative.  The child has remained in the relative placement since then, where his physical, emotional, and medical needs are being met.

The father remained in federal prison as of the termination trial.  And the record indicates his federal incarceration followed a string of state-court convictions for assault-related crimes, some of which originated as domestic-abuse charges.  The earliest the father will be released from federal prison is late 2025—well beyond six months after trial.  And even then, he would be placed at a halfway house where he could not resume custody.  While incarcerated, the father has attended classes and had phone calls with and sent gifts to the child.  As the juvenile court put it, the child "has not shown much interest

in the calls." In testimony, the father candidly admitted he was not capable of resuming custody as of trial. And the HHS worker testified that the father had stopped writing letters because the father disagreed with how the case was being handled. The father's core request was that the child be returned to the mother's custody or, failing that, an extension of time and placement in a guardianship with the relative.

The child has been diagnosed with post-traumatic stress disorder and had some behavioral challenges. The child was frequently dysregulated after visits with the mother, though this improved some over time. According to the mother, the child generally knows who the father is but has no understanding of why he has been "away" virtually the entirety of the child's life. When the guardian ad litem (GAL) spoke with the child, the child indicated placement with the relative was going well and he wanted to stay there. The court appointed special advocate (CASA) and HHS worker made similar observations.

At the termination trial, the father called as a witness the mother of five of his other children. She testified that she thought he was a good father to those children, was "as present as he can be," and had contributed financially. And she opined that she thought the child should be returned to the mother.

The county attorney, HHS, the CASA, and the GAL recommended termination of both parents' parental rights. The juvenile court found terminating the mother's rights was not in the child's best interests, but it concluded otherwise with respect to the father and terminated his rights under Iowa Code section 232.116(1)(f) (2024). The father appeals, challenging whether termination was in the child's best interests, whether HHS made reasonable efforts toward

reunification, and whether any of the permissive exceptions applied.[1]  We review de novo.  *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

**Best Interests.**  The father challenges whether termination was in the child's best interests, and the State contests error preservation because the father did not challenge termination on this basis below.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").  The State is correct: the father did not challenge termination below at all.  But a majority of this court recently held he was not required to do so.  *See In re J.R.*, No. 24-0942, 2025 WL 52738, at *2 (Iowa Ct. App. Jan. 9, 2025) (en banc).  So we must reject the error-preservation challenge.

On the merits, we agree with the juvenile court that terminating the father's rights is in the child's best interests.  In making this determination, we give primary weight "to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2).  The father has been absent from the child's life due to incarceration for repeated criminal conduct.  He

---

[1] The father's petition on appeal consists largely of a few legal citations, lengthy block-quotes from the juvenile court ruling, and a statement that he "disagrees." Our rules make clear that an appellant must explain "why" he or she disagrees by making legal argument.  *See* Iowa Rs. App. P. 6.201(1)(d), .1401–Form 5; *In re K.D.*, No. 21-0581, 2021 WL 3897419, at *2 (Iowa Ct. App. Sept. 1, 2021) (discussing these rules).  And we disapprove of the approach taken by the father's petition on appeal.  That said, we have done our best to address the issues presented without undertaking the father's research and advocacy for him.  *See Ronnfeldt v. Shelby Cnty. Chris A. Myrtue Mem'l Hosp.*, 984 N.W.2d 418, 421 (Iowa 2023) ("We generally will not do a party's work for them, particularly if that requires us to assume a partisan role and undertake the party's research and advocacy." (cleaned up)).

cannot take an active role in parenting now or in the near future. And he has virtually no relationship with the child. In contrast, the child's current placement has been tending well to the child's needs, including facilitating needed therapy and mental-health treatment. Termination is in the child's best interests.

**Reasonable Efforts.** The father next asserts HHS did not make reasonable efforts toward reunification. To preserve error on such a claim, parents must "object when they claim the nature or extent of services is inadequate," and they must generally do so before the termination trial. *In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017); *see also In re C.B.*, 611 N.W.2d 489, 493–94 (Iowa 2000). The father failed to timely object here. We consider this claim no further, as the father never requested specific additional services below.

**Relative-Custody Permissive Exception.** The father also urges the permissive exception in Iowa Code section 232.116(3)(a)—which applies when a relative has legal custody—should have thwarted termination. Assuming without deciding error was preserved, we decline to thwart termination on this basis. The child is not in the legal custody of a relative—he is in the legal custody of HHS. The exception does not apply. *See In re A.B.*, 956 N.W.2d 162, 170 (Iowa 2021). And even if the relative placement had custody, "[a]n appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child. The child's best interests always remain the first consideration." *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997). We have already concluded that the child's best interests are met through termination, and this conclusion is not countermanded by the child's placement with a relative.

**AFFIRMED.**